### Re Robert Bennett SCHWARTZ

### v.

### UNITED JERSEY BANK et al.

### Civ. A. No. 76–2359.

United States District Court,
D. New Jersey.

Aug. 26, 1980.

Robert B. Schwartz, plaintiff, pro se.

Stephen D. Cuyler, Stryker, Tams & Dill, Newark, N. J., for defendants.

DEBEVOISE, District Judge.

This letter opinion sets forth my disposition (and reasons therefor) of plaintiff's motion for reconsideration of my order filed May 5, 1980 granting summary judgment in favor of the remaining defendants.

In his complaint and amended complaint plaintiff Schwartz sued defendants United Jersey Bank and two of its tellers, Mary Ann Robertson and Marie Gallup, charging that they had conspired with certain federal and state officials to deprive plaintiff of his rights in violation of the First and Fifth Amendments of the United States Constitution and, further, that defendants had tortiously violated his rights under New Jersey law.[1] Jurisdiction is asserted under 42 U.S.C. §§ 1983 and 1985, 28 U.S.C. § 1343 and pendent jurisdiction.

---

**1.** The complaint (and amended complaint) named another bank official, Robert Walling, as a defendant, but he was never served. The complaint and amended complaint also named three federal and state law enforcement officers as defendants, but the action was dismissed as to them. The most recent motion to

The facts which give rise to the complaint are the following:

In October, 1974 plaintiff and his wife came under investigation by the Drug Enforcement Administration of the United States Department of Justice when information was received that they had been trafficking in cocaine and heroin. John Cipriano (one of the dismissed defendants), a Special Agent of the Drug Enforcement Administration, was assigned to investigate plaintiff and his wife.

On December 10, 1974 an indictment was returned charging plaintiff and his wife with one count each of trafficking in cocaine and heroin in violation of 21 U.S.C. §§ 173 and 174. Plaintiff emphasized that the charges contained in the indictment involved conduct terminating in 1970 and had nothing to do with subsequent events which were the subject of the investigation giving rise to the instant action. Plaintiff was convicted, and his conviction and sentence to a ten–year term were affirmed on appeal. *U. S. v. Schwartz*, 535 F.2d 160 (2nd Cir. 1976), *cert. den.* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977), *reh. den.*, 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977).[2]

In addition to the investigation by the Drug Enforcement Administration, plaintiff and his wife had been investigated by the New York City Police Department. Officers of that department informed Cipriano that plaintiff's wife had been observed on several occasions travelling to United Jersey Bank in Old Bridge where she exchanged small denomination bills of United States currency for a few larger denomination bills, after which she went to the safe deposit box areas of Chemical Bank and/or First National City Bank in New York City.

On December 18, 1974, eight days after plaintiff was indicted and six days after he was arrested, Cipriano interviewed the bank's employees Walling, Robertson and

Gallup. He learned that plaintiff had no account there, that plaintiff's wife did have an account and that the wife had been observed exchanging small bills for large bills.

On December 26, 1974, Cipriano applied for the issuance of five search warrants before a United States Magistrate in the Southern District of New York. In support of the application Cipriano submitted an affidavit in paragraph five of which he set forth his recollection of his interview with the bank employees. He stated that the interviews revealed that between January, 1973 and June, 1974 plaintiff's wife went to the bank approximately three times a week; that on one of those weekly visits she would exchange $4,000 to $6,000 in cash for large denomination bills and money orders or cashier's checks and that on two of those weekly visits she would exchange $6,000 to $10,000 in cash for large denomination bills and money orders or cashier's checks.

As a result of Cipriano's application, search warrants were issued and were executed against five safe deposit boxes of plaintiff and his wife. The contents were seized and turned over to the United States Attorney's Office.

A suppression hearing was held at which Walling, Gallup and Robertson testified. Their testimony was to the effect that on a number of occasions plaintiff's wife had come to the bank and exchanged small bills for large bills and purchased money orders and cashier's checks. Their testimony was not consistent with the statements Cipriano's affidavit attributed to them either as to the amounts of money which were exchanged upon each visit or the frequency of the visits of plaintiff's wife to the bank.

On the basis of this discrepancy plaintiff concludes (and for the purposes of the present motion we assume) that Mary Ann Robertson and Marie Gallup (the two re-

dismiss did not direct itself to the question whether the remaining defendants may benefit from any immunity enjoyed by the officials with whom they are alleged to have conspired, see "Liability of Private Actors Who Conspire With Immune State Officials," 80 Col.L.Rev. 802 (May 1980).

2. Plaintiff's wife fled the country prior to trial and was tried and convicted in absentia.

maining individual defendants) gave erroneous information to Cipriano as to the frequency of plaintiff's wife's visits to the bank and as to the amount of money she exchanged on those visits.

The causes of action which can be gleaned from the complaint, the amended complaint and in plaintiff's factual statement incorporated in the pretrial order are three–fold: (i) the bank employees conspired with the New York Police Officer John O'Connor (previously dismissed as a defendant) and with federal law enforcement officers to deprive plaintiff of his constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985; (ii) the bank employees conspired among themselves to deprive plaintiff of his constitutional rights in violation of 42 U.S.C. § 1985; and (iii) the bank employees defamed plaintiff by giving false information about his wife, giving rise to an action for slander under New Jersey common law.

After the remaining defendants moved for summary judgment plaintiff asserted that he is also charging that the bank employees committed the tort of intentional infliction of emotional distress, relying upon *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1975), which applied Pennsylvania law.

█ In an oral opinion rendered on April 21, 1980, I granted defendants' motion for summary judgment. My reasons are set forth in that opinion. Plaintiff has moved for reconsideration. The only point which I believe requires further discussion is my rejection of plaintiff's contention that he is entitled to a trial of his claim grounded upon intentional infliction of emotional distress. In my oral opinion I gave two reasons for rejecting plaintiff's contention. First, relying on *Hafner v. Hafner,* 135 N.J.Super. 138, 343 A.2d 166 (Law Div. 1975), I concluded that the tort of intentional infliction of emotional distress has not yet gained recognition in New Jersey, although a plaintiff may often recover for emotional distress which is suffered as a result of the commission of a recognized tort. Second, even if New Jersey had rec-

ognized the tort of intentional infliction of emotional distress, neither the undisputed facts established in the present case nor any permissible inference from such facts could support a finding that defendants committed this tort.

Plaintiff argues on his motion for reconsideration that the statement in *Hafner, supra,* to the effect that the tort of intentional infliction of emotional distress "has not yet gained express recognition in New Jersey," at p. 332, no longer correctly reflects the law of this State, citing, among other cases, *Muniz v. United Hsps. Med. Ctr. Pres. Hsp.,* 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977), *reversing,* 146 N.J.Super. 512, 370 A.2d 76 (Law Div. 1976).

In *Muniz,* the parents of a new–born child brought suit against the defendant– hospital seeking damages allegedly resulting from the hospital's crude method of informing them of the death of their baby and its failure to locate the baby's body or confirm its death during the following three weeks. The parents sued for simple negligence and for the "outrageous conduct by means of the gross and wanton negligence of the defendant as constituting an intentional infliction of mental and physical suffering to both plaintiffs." 146 N.J.Super. 512, 515, 370 A.2d 76, 78. The trial court read the latter claim as asserting the tort of "outrage". After a thorough discussion of the history of the tort, it dismissed the claim for failure of plaintiffs to establish the requisite intent or deliberation or recklessness.

The Appellate Division of the Superior Court reversed. In its opinion it stated that before determining the question of the hospital's liability to the plaintiffs under the facts alleged, the trial court should have permitted an amendment to the complaint so as to develop the requisites for the hospital's responsibility in damages by reason of malpractice or negligence or some other reasonable basis for liability where its conduct relates to a dead body. Further, the appellate court stated that the parties should have been afforded discovery before a decision was rendered.

The appellate court noted that

We express no views as to what an appropriate predicate for the hospital's liability might be or the kind or extent of damage, if any, that may be recovered by plaintiffs; nor do we now rule on whether the circumstances of the case, as alleged in the complaint, are such that relief must be afforded plaintiffs. 153 N.J. Super. at 82, 379 A.2d at 58.

Further, the court stated that after an amendment of the complaint and discovery a claim for relief might "conceivably" be based on four theories, including "(3) conduct by the hospital that would warrant recovery for the tort of outrage." 153 N.J. Super. at 82, 379 A.2d at 58.

It is "conceivable", therefore, that the *Muniz* case establishes the existence of the tort of intentional infliction of emotional distress in New Jersey. However, in view of the self–effacing remarks of the court limiting the effect of its rulings, it is far from certain that this is the intended effect of the Appellate Division opinion. Furthermore, subsequent New Jersey opinions which cite *Muniz* involve cases in which damages for emotional distress are permitted, not as a consequence of a new tort, but rather as a part of the damages recoverable upon the commission of a recognized tort or other wrong.

In *Lemaldi v. DeLomaso of America, Inc.*, 156 N.J.Super. 441, 883 A.2d 1220 (Law Div. 1978), it was held that a jury might make an award for mental anguish for conduct of an automobile manufacturer's personnel after selling a plaintiff a gravely defective automobile. In *Berman v. Allan*, 80 N.J. 420, 404 A.2d 8 (1979), the Court held that parents of a child born with Down's Syndrome could recover for mental and emotional anguish from a physician who had negligently failed to administer tests during pregnancy which would have disclosed the condition and permitted the parents the option of terminating the pregnancy. In *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980), the Court held that a mother who observes the death of a child crushed by an elevator negligently installed or maintained by the defendant may recover for mental and emotional anguish.

Each of the foregoing cases cited *Muniz*; each allowed recovery for emotional distress caused by a recognized tort or other wrong. This suggests to me that a proper interpretation of *Muniz* is that it does not create the tort of outrage or intentional infliction of emotional distress in New Jersey. Rather, the case recognizes that a hospital can be charged with negligence or malpractice if it callously or negligently handles the dead bodies of its former patients and that an element of damages may be the emotional distress caused by such negligence or malpractice, *cf., Spiegel v. Evergreen Cemetery Co.*, 117 N.J.L. 90, 186 A. 585 (Sup.Ct. 1936).

I recognize that New Jersey's neighboring states of Pennsylvania and New York have incorporated into their common law the tort of intentional infliction of emotional distress, e. g., *Chuy v. Philadelphia Eagles Football Club, supra*; *Kajtazi v. Kajtazi*, 488 F.Supp. 15 (E.D.N.Y.1978). I also recognize the tendency of the New Jersey courts to ever expand the areas of potential liability, e. g., *Costa v. Josey*, 83 N.J. 49, 415 A.2d 337 (1980); *Portee v. Jaffee, supra.* Thus, it would not be surprising if in a case involving compelling circumstances the New Jersey Supreme Court were to adopt as a part of New Jersey's common law the tort of intentional infliction of emotional distress. However, I do not believe that any New Jersey court has yet taken this step.

Furthermore, as I held in my oral opinion, even if New Jersey were to adopt the tort of outrage or intentional infliction of emotional distress, the conduct with which plaintiff charges the remaining defendants in this case could not come within the confines of that tort.

Therefore, for the reasons set forth herein and in my oral opinion plaintiff's motion for reconsideration is denied. I request that defendants' attorneys submit an appropriate form of order.