**Lester D. DOLL, Jr., Plaintiff,**

v.

**PORT AUTHORITY TRANS–HUDSON CORPORATION, Defendants.**

**No. CIV.A. 97–4186.**

United States District Court,
D. New Jersey.

April 25, 2000.

Maria L. Petrillo, David L. Pennington, Harvey, Pennington, Cabot, Griffith & Rennenesen, Ltd., Philadelphia, PA, for Plaintiff.

Hugh H. Welsh, Sharon McGahee, Port of Authority of New York and New Jersey, Newark, NJ, for Defendants.

## *OPINION*

HOCHBERG, District Judge.

Plaintiff, Lester Doll, ("Doll") a former employee of defendant Port Authority Trans Hudson Corporation ("PATH"), filed a complaint on August 18, 1997, alleging that his discharge by PATH in January, 1996:(i) discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 623; (ii) constituted wrongful termination and breach of contract under New Jersey law; and (iii) negligently inflicted emotional distress upon him.[1] PATH brings the instant mo-

---

1. In his complaint, plaintiff also asserted causes of action based upon the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–1 *et seq.;* Railroad Retirement Act; common law defamation; and the tort of intentional infliction of emotional distress. Doll does not contest the dismissal of these Counts (Counts II, III, V and VII) and they are, therefore,

tion for summary judgment, which will be granted as to all counts of the complaint.

## I. *FACTS*

PATH, a subsidiary of the Port Authority of New York and New Jersey ("the Port Authority") operates an inter-city rapid transit system between New Jersey and New York City. Plaintiff Doll was an Operations Examiner for PATH from March, 1978 until his termination in January, 1996. Prior to December 2, 1995 Doll had an unblemished work record as an Operations Examiner for PATH. A disastrous train accident on December 2, 1995 left two PATH maintenance workers dead and a third critically injured when they were struck by a PATH train. It was the worst train accident in PATH history.

Doll and others were discharged or suspended after full investigation by PATH the National Transportation Safety Board ("NTSB") and the Federal Railroad Administration ("FRA"). Doll charges that his termination was the result of age discrimination by PATH; PATH asserts that Doll was terminated for poor performance and violation of safety rules that contributed, in part, to the catastrophic accident.

On December 2, 1995, maintenance work was being performed on one of the two tracks which PATH uses for its train service between Newark, New Jersey and the World Trade Center in New York City. As a result, one track was removed from service, and the trains in both directions ran on the other track. With trains operating in both directions on the same track, safety was a heightened concern. When a broken rail joint was discovered near signal R 28X, three experienced PATH employees were asked to make the repair. They did so without a flagman keeping watch, in violation of PATH policies and procedures.

When power was restored to the initial track under repair, Doll boarded the head car of the first PATH train traveling eastbound. As the eastbound train headed from Newark to the World Trade Center, it passed the three PATH maintenance employees in the track area near signal R 28X approximately ten minutes prior to the fatal accident. The engineer saw the PATH workers, blew his whistle, and slowed down to enable them to clear the track. Doll, standing right behind the engineer, also noticed the workers in the track area, but saw no safety hazard and "saw no need to advise the Control Center of the track workers' presence in the area." [2] The train continued toward the World Trade Center, stopping at a signal to allow a PATH train traveling in the opposite direction to pass on the single track in operation. The engineer of the eastbound train waved to the engineer of the westbound train. However, neither Doll nor the engineer of the eastbound train attempted to notify the Control Center or otherwise warn the engineer of the westbound train that there were PATH employees working without a flagman on the track just around the bend. Two of these track workers were killed moments later when the westbound train struck them.

As a result of this accident, Doll was terminated. Two other, younger, employees were also fired, including the engineer of the train that struck the workers. Path suspended additional employees whose conduct contributed to the accident. Both the NTSB and the FRA concluded that Doll and others should have taken precautions to prevent the accident. Specifically, a report of the NTSB noted:

"[A] Path Operations Examiner [Doll] was on the front end of the [first car of Train 135]. Neither he or the engineer [of the train], notified [the westbound

---

dismissed and will not be addressed in this Opinion.

**2.** Doll's attention had been distracted briefly by the presence of passengers on the platform

at the Harrison station, and he radioed the Control Center to make sure that the passengers were directed to the correct platform.

train or] the train master that the track men were working without a watchman."

In the *PATH Book of Rules,* Doll's duties and responsibilities as Operations Examiner included supervision of the performance of other PATH employees. The NTSB identified numerous breaches of the Rules that contributed to the accident:

"[I]nadequate management oversight of rail operations, the failure of the engineer of [the westbound train] to observe the workers due to inattention, the failure of the track foreman to obtain permission to work on the track and to appoint a workman, *and failure of the operations examiner and engineer on the leading end of the control car of [the eastbound train] to notify the train master of track workers working without a watchman.*" (emphasis added).

Doll argues that the accident was caused by the recklessness of the engineer of the westbound train that struck the three workers, and that the danger was compounded by the actions of the Train Master and Assistant Train Master, who failed to alert the westbound train's engineer of the danger on the track. He further argues that the engineer of the train on which he was riding was suspended, rather than being terminated, even though he observed one of the maintenance workers within the track gauge. Doll believes that the President of PATH who directed his discharge was motivated to terminate him, at least in part, by his age, as well as his high salary.

PATH responds that three PATH employees, including Doll, were terminated as a result of the accident, and that the other two terminated employees were younger than Doll. PATH proffers a non-discriminatory explanation for Doll's termination. PATH contends that Doll's termination was based on the fact that Doll, as the senior supervisor on the eastbound train, should have exercised his judgment to take precautionary action to prevent the accident by alerting the Train Master to the work crew he had observed in the track area. While PATH does not claim that Doll "caused this accident," its position is that Doll's inattention to the track area and failure to advise the Train Master of his sighting of the unguarded work crew were "contributing factors".[3]

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *See Peters v. Delaware River Port Auth. of Pa. and N.J.,* 16 F.3d 1346, 1349 (3d Cir.1994).

Substantive law controls the inquiry into which facts are "material". *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if a reasonable jury could decide the issue in the nonmovant's favor. *Id.* Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

---

**3.** This Court is in receipt of Doll's sur-reply to the instant motion attaching an unedited copy of the PATH police report relating to the accident. The police report lists those who, in the opinion of Port Authority police, are most directly culpable for the accident. That list does not include Doll. While the sur-reply and police report have been carefully considered, they do no affect the outcome of this case. While the varying degrees of culpability of the individuals involved in the accident would be most germane to a negligence action, it is not outcome determinative to the instant action alleging age discrimination.

the entry of summary judgment." *Id.; accord Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir.1999) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. This requires the moving party to establish either that there is no genuine issue of fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See Id.* at 322–23, 106 S.Ct. 2548. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller,* 843 F.2d at 143; *see also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

However, at the summary judgment stage, this Court neither weighs the evidence nor makes credibility determinations; these tasks are within the sole domain of the fact-finder. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Therefore, to demonstrate a genuine issue of material fact, the summary judgment opponent need not produce evidence so strong that it mandates a decision in its favor. Rather, the party opposing summary judgement must adduce "evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Id.; see also In re Headquarters Dodge,* 13 F.3d 674, 679 (3d Cir.1993). "Speculation and conclusory allegations do not satisfy this duty." *Ridgewood Bd. of Educ.,* 172 F.3d at 252 (*citing Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995)).

It is clear that if a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* at 587, 106 S.Ct. 1348 (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## III. *DISCUSSION*

### A. THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

In support of his age discrimination claim plaintiff contends that other, younger, PATH employees who "engaged in clear and unequivocal failures to act" in connection with the accident were subject to suspension rather than dismissal, and that PATH promoted several younger individuals to full-time, permanent positions as Operations Examiners after Doll was terminated.

PATH responds that it fired several employees for their roles contributing to this accident, including several who were younger than Doll, and that Doll was terminated, not based on his age or his salary, but for his failure to give warnings after he saw the work crew in the track area.

This Court does not doubt that plaintiff is sincere in his beliefs that he was not at fault in connection with the accident and that others were far more blameworthy than he for the lapses in judgment that led to the accident. While the relative degrees of negligence of the disciplined PATH employees might well be central to the case if plaintiff were defending a tort action brought by the deceased workers' next of kin, the legal analysis is far different under the ADEA.

Under the burden shifting formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff establishes a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; (3) that he has suffered an adverse employment action and, (4) that similarly situated employees outside the protected class were treated more favorably by the employer. *Id.* at 802, 93 S.Ct. 1817; *see also Miller v. Beneficial Management Corp.*, 977 F.2d 834, 847 (3d Cir.1992). If the plaintiff succeeds in establishing this *prima facie* case, he creates an inference of discrimination. The employer can rebut that inference by articulating a legitimate, non-discriminatory reason for the adverse employment decision. *Id.*

If the employer satisfies its burden by offering proof of a non-discriminatory reason for termination, plaintiff's *prima facie* case is rebutted and plaintiff then bears the burden of demonstrating that the employer's proffered reasons for termination are pretextual, and that the employer intentionally discriminated against the plaintiff. *Saint Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (plaintiff must prove by a preponderance "both that the reason was false, and that discrimination was the real reason.") (internal citations omitted).

In meeting this burden, the plaintiff must "produce evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." *Beryl v. Marriott Hotels*, 110 F.3d 986, 990 (3d Cir.1997).

To deny a motion for summary judgment brought by the employer, "[t]he district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons [for termination] to permit a reasonable factfinder to conclude that the reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996)(en banc). Thus, Doll must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [PATH's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal quotations and citations omitted). Alternatively, plaintiff must present evidence which allows the factfinder to infer that discrimination was, more likely than not, a motivating or determinative cause of the adverse employment decision. *Id.* at 764.

Applying the appropriate legal standard in this case, this Court finds that plaintiff is a member of the protected class and suffered an adverse employment action. Thus, he has met two of the four prongs of the test necessary to establish a *prima facie* case of discrimination. Additionally, prior to the December, 1995 accident, plaintiff performed his job satisfactorily, thereby satisfying another prong of the test.[4]

Plaintiff's proof of the final prong of the test required to establish a *prima facie* case, to wit, that PATH treated other, younger, employees more favorably is a hurdle that plaintiff does not easily surmount. Two younger employees were also terminated. To deal with this obvious obstacle to his claim, plaintiff limits the class of employees considered in his analysis to those who were not directly culpable for the accident. Within this limited group, plaintiff asserts that the younger employees were merely suspended, not terminated. Thus, plaintiff argues, he should have been treated like the younger, less culpa-

---

4. Although PATH argues that Doll did not perform his job satisfactorily by virtue of his inattention and lapse in judgment that contributed to the instant accident, this Court will not merge the proffered reason for termi- nation into the second prong of the *prima facie* case. Thus, for purposes of this motion, this Court will assume that plaintiff can demonstrate that he performed his job satisfactorily prior to the event that led to termination.

ble, employees who were merely suspended rather than having been treated like the younger, more culpable, employees who were fired. This Court need not reach this effort to "fine tune" the fourth prong of the *McDonnell Douglas* test to evaluate whether the degree of harshness in the sanctions imposed, relative to the degree of fault, discriminated between similarly situated employees outside the protected class.

■ Even assuming *arguendo* that Doll were able to set forth a *prima facie* case, there is simply no evidence that PATH's proffered non-discriminatory reason for Doll's termination is pretextual. In this case, two men were killed and another was severely injured because of lapses in judgment by various individuals, including Doll. PATH management believed, and the NTSB and FRA agreed, that Doll could have taken action to prevent the accident. This corroborated good faith belief is a legitimate, non-discriminatory reason that justifies PATH's termination of Doll. Plaintiff has not and cannot present evidence from which a factfinder could reasonably conclude that PATH's reason for termination was a pretext. Nor could a factfinder reasonably infer that discrimination was, more likely than not, a motivating or determinative cause of Doll's termination from employment with PATH. Thus, plaintiff's ADEA claim must fail.

## B. *BREACH OF CONTRACT AND WRONGFUL TERMINATION*

In Counts IV and VI of his Complaint, Doll contends that PATH breached an implied contract of employment with plaintiff by firing him following the accident. Plaintiff alleges that he had an implied contract with PATH and that the contract ensured that he would be fired only for cause. This implied contract claim is based on PATH's employment manual. Other plaintiffs before Doll have attempted to make similar arguments in cases of alleged employment discrimination; these claims have come to be known as *Woolley* claims. *See Woolley v. Hoffmann–La*

*Roche,* 99 N.J. 284, 491 A.2d 1257 (1985), modified 101 N.J. 10, 499 A.2d 515 (1985).

■ It is undisputed that plaintiff had no oral or written contract with PATH. He was, therefore, an employee at will. *See Ditzel v. University of Medicine and Dentistry New Jersey,* 962 F.Supp. 595, 606 (D.N.J.1997). Plaintiff seeks to create an implied contract from the *PATH Book of Rules;* a publication that sets forth operational requirements for the PATH train system which is distributed to all PATH employees. (Cert. of Scott ¶ 11).

■ In *Woolley,* the Supreme Court of New Jersey held that "an employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract." *Woolley* 99 N.J. at 295, 491 A.2d 1257. The key consideration in determining whether an employment manual creates such an implied obligation is the reasonable expectation of employees. "[W]hen an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions), the judiciary, instead of grudgingly conceding the enforceability of those provisions, should construe them in accordance with the reasonable expectations of the employees." *Id.* at 297–98, 491 A.2d 1257 (internal quotations and citations omitted). "[T]he definitiveness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution," both bear on whether employees may reasonably understand an employment manual to provide enforceable obligations. *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 393, 643 A.2d 546 (1994).

The *Woolley* Court further held that any implied contract arising from an employment manual does not protect against termination; rather, the implied promise is to safeguard the employee from arbitrary termination. 99 N.J. at 300, 491 A.2d

1257. In order to state a *Woolley* claim in the first instance, plaintiff must bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause. *King v. Port Authority of New York and New Jersey,* 909 F.Supp. 938, 942 (D.N.J.1995). Moreover, the *Woolley* decision permits an employer to negate an implied contract by the inclusion of a clear and prominent disclaimer in the employment manual. 99 N.J. at 307, 309, 491 A.2d 1257; *Witkowski,* 136 N.J. at 392, 643 A.2d 546; *see also, Edwards v. Schlumberger–Well Services,* 984 F.Supp. 264, 283–84 (D.N.J.1997).

■ The *PATH Book of Rules* does not contain an implied contract governing grounds for termination. Although this publication does prescribe general rules of conduct, rules for the operation of trains and signals, and gives job descriptions and division responsibilities, the *PATH Book of Rules* contains neither terms and conditions of employment nor rules governing termination bases or procedures. Instead, the *PATH Book of Rules* clearly disclaims any implied contract:

> [t]he rules, provisions and position descriptions contained herein are provided for the notification and advisement of all employees. They should not be, and are not to be, considered the terms of any contract agreements between PATH and its employees.

A reasonable employee reading this language could not have thought that it was intended to create a legally binding contract regarding grounds for termination. Thus, there is no implied contract between plaintiff and PATH, and summary judgment is granted to PATH on Counts IV and VI of plaintiff's Complaint.

## C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Plaintiff's tort claim for negligent infliction of emotional distress is both time-barred and meritless. Pursuant to N.J.S.A. 32:1–163, a tort action premised on State law shall be commenced within one year of the date on which the cause of action accrued. The statute also requires that notice be served on the Port Authority at least sixty days before suit is filed. The notice provision may be satisfied by substantial compliance. *Zamel v. Port of New York Authority,* 56 N.J.L. (1970). However, the requirement that state law causes of action be filed within one-year is a jurisdictional provision of N.J.S.A. 32:1–163 and is strictly construed. *Matthews v. Port of New York Authority,* 163 N.J.Super. 83, 85, 394 A.2d 172 (Law Div.1978); *Rao v. Port of New York Authority,* 122 F.Supp. 595, 597 (E.D.N.Y.1954). Here, Doll's complaint was filed months after the expiration of the one-year time period and it is, therefore, time-barred.

■ Even if plaintiff could somehow surmount his failure to file this cause of action within the one year state statute of limitations period, he has adduced no facts tending to show that PATH's conduct in terminating him was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community..." *See King,* 909 F.Supp. at 943; *Cautilli v. GAF Corp.,* 531 F.Supp. 71, 72–73 (E.D.Pa. 1982). While the plaintiff has voluntarily withdrawn his claim of intentional infliction of emotional distress, his claim that severe emotional distress was negligently inflicted upon him by his employment termination also fails.

Courts have long recognized the difficulty involved in establishing a claim for infliction emotional distress in an employment related dispute. *Id.* In *Cautilli,* the Court, applying New Jersey law, dismissed plaintiff's claim of intentional infliction of emotional distress, holding: "[W]e do not believe that [New Jersey] courts would extend this tort to cover an employment contract dispute ... To the contrary, application of this tort must be restricted to instances of extreme and outrageous conduct; indeed the limited scope of the tort tolerates many kinds of unfair, unjust and unkind conduct." 531 F.Supp. at 74. The

Third Circuit has stated that it is "extremely rare" that conduct in an employment termination dispute would rise to the level of outrageousness necessary to provide recovery for the tort of intentional infliction of emotional distress. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988). "[W]hile loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for intentional infliction of emotional distress." *Id.* (internal quotations and citations omitted).

In the case at bar, plaintiff fails to set forth any evidence of extreme and outrageous conduct negligently inflicted upon him by PATH. The fact that plaintiff now limits his claim to the negligent infliction of emotional distress does not change the outrageous character of the distress that must be proven. Plaintiff concedes that "[l]iability should be dependent on defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted," *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429, 561 A.2d 1122 (1989), (internal quotations and citations omitted). This Court finds no material fact in dispute as to whether or not plaintiff can prove a cause of action based on negligent infliction of emotional distress. The entire set of facts asserted with respect to PATH management's conduct falls far short of establishing the degree of shock and outrage necessary to support such a claim. Moreover, plaintiff has asserted insufficient facts to support a finding that he suffered the severe degree of emotional distress required by law in support of such a cause of action. *See King*, 909 F.Supp. at 943. The facts of this case, while painful and unjust in plaintiff's eyes, are precisely the type of claim determined by the Third Circuit in *Cox* not to be appropriate for a cause of action based upon infliction of emotional distress.

## IV. CONCLUSION

For on the foregoing reasons, summary judgment will be entered for defendant PATH on all counts of plaintiff's complaint. An appropriate Order will issue.