**Al–Rufus ANDERSON, Plaintiff,**

v.

**MCINTOSH INN d/b/a Courtyard Marriott, Defendant.**

**No. CIV.A.02–1262–JJF.**

United States District Court, D. Delaware.

March 28, 2003.

Al–Rufus Anderson, Dale City, VA, pro se.

Anthony G. Flynn, William W. Bowser, Esquires of Young Conaway Stargatt & Taylor, Wilmington, DE, Nicholas N. Price, Esquire of Schnader Harrison Segal & Lewis, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court are Plaintiff's Motion for Summary Judgment (D.I.14), Defendant McIntosh Inn of Delaware, Inc.'s ("McIntosh Inn") Motion for Summary Judgment (D.I.21), Defendant's Motion to Extend Time to File an Answer

Brief (D.I.18), and Plaintiff's Motion to Extend Time to File Pleadings, Answer Briefs, etc. (D.I.25). For the reasons set forth below, Defendant's Motion for Summary Judgment (D.I.21) will be granted, Plaintiff's Motion for Summary Judgement (D.I.14) will be denied, Defendant's Motion to Extend Time (D.I.18) will be granted, and Plaintiff's Motion to Extend Time will be granted (D.I.25).

## BACKGROUND

### I. Factual Background

Defendant, McIntosh Inn is a hotel located in Wilmington, Delaware. Plaintiff is an African–American male of Liberian origin hired on August 2, 1999 as a Night Auditor for the McIntosh Inn until his termination on December 30, 1999 (D.I. 28 at 4, D.I. 22 at 2). The Night Auditor position required an individual to work from 11:00 p.m. until 7:00 a.m. and perform various administrative duties including monitoring the front desk area. (D.I. 28 at 15–17). Plaintiff's employment was generally without incident until December, 1999 as evidenced by a mid-November performance evaluation, indicating very good to excellent ratings, and signed by both his immediate manager, Kristine Rose, and district manager, Greg Ritchey. (D.I. 28, Attachment A). Soon after the evaluation, on November 21, 1999, Plaintiff's pay rate was increased from $8.50 to $9.00 per hour, making him the highest paid front desk employee. (D.I. 23 at 3).

Shortly before Mr. Anderson's termination, Kristine Rose, the General Manager of the McIntosh Inn, became aware of a complaint regarding Mr. Anderson. (D.I. 24 ¶ 3). Specifically, when she arrived at work one morning shortly before December 30, 1999, she was told that Mr. Anderson had made a key card and had entered an occupied guest room at about 1:00 or 2:00 a.m. (D.I. 24 ¶ 3). The guests in the room complained about the incident, and as a result, the hotel did not charge the guests for their stay at the hotel. (D.I. 24 ¶ 3). When confronted with this incident, Mr. Anderson explained that he was trying to find a vacant guest room for guests who wished to be moved to a smoking room. (D.I. 24 ¶ 4).

As a result of this complaint, Ms. Rose began to look into other matters regarding Plaintiff's conduct. (D.I. 24 ¶ 4). Ms. Rose contends that she then heard complaints that Mr. Anderson had been found sleeping in the front lobby of the hotel at night and that he entered another room, (Room 129), which was being used by the hotel for storage. (D.I. 24 ¶ 5). Also, Defendant alleges that, Ms. Valerie Washington, a hotel cook, complained that when she came to work one morning, two weeks prior to Mr. Anderson's termination, she knocked on the laundry room door and Mr. Anderson responded "Don't come in I'm naked... I'm not dressed", to which she stated she would wait for him at the front desk. Ms. Washington reported this incident to her supervisor, Angela Barlow, who then reported it to Ms. Rose. (D.I. 23, letter of Valerie Washington). Defendant contends that when confronted by Ms. Rose with these incidents, Plaintiff became argumentative and began yelling at Ms. Rose in front of other staff members and guests. On the other hand, Plaintiff contends that he did not become argumentative. Mr. Anderson was later terminated by Ms. Rose on or about December 30, 1999. (D.I. 24, Exhibit A). The reason for termination cited by Ms. Rose was insubordination. (D.I. 24, Attachment B).

Subsequently, Jessica Porter, a white female Guest Services Representative was assigned to perform Plaintiff's duties on an interim basis. (D.I. 23 at 3). Approximately three weeks later, on January 20, 2000, Defendant hired Charles Prayer, an African–American male to fill the vacant Night Auditor position. (D.I. 23 at 3).

Mr. Prayer's employment was eventually terminated for cause after one month of employment and Ms. Porter once again assumed the Night Auditor's duties.

## II. Procedural Background

Plaintiff filed an EEOC charge alleging violations of Title VII, of the Civil rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against the McIntosh Inn for discriminatory termination based on his race, sex and national origin. (D.I.3, Attachment). Specifically, Plaintiff alleged:

I have repeatedly tried to find out why I was discharged. To no avail. This came as a complete surprise to me since I had received such a favorable performance evaluation one month prior. At the time, I was the only black Front Desk representative/Night Auditor. I was the only male Front Desk Representative/Night Auditor; and I was the only person of another national origin (Liberian) who worked as Front Desk Representative/Night auditor.

I believe that I was subjected to discriminatory treatment because of race (black), my sex (male) and my national origin (Liberian), in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that respondent continues to discriminate against me by not providing me an explanation for my termination.

(D.I.3, Attachment).

The EEOC responded on January 9, 2001 with a right to sue letter. (D.I.3, Attachment). Subsequently, Plaintiff initiated this lawsuit, alleging that Defendant violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–1 *et seq.* (D.I.3). Specifically, Plaintiff alleges that the Defendant discriminated against him on the basis of his race, sex, color and national origin (D.I.3).[1] Additionally, Plaintiff alleges that Defendant discriminated against him because he was denied a pay-raise that was given to similarly situated white female employees. (D.I.3). Subsequently, the parties filed cross-motions for summary judgment. (D.I.14, 21). This Memorandum Opinion addresses the Defendant's Motion for Summary Judgment. (D.I.21).

## III. MOTIONS TO EXTEND TIME

Both parties have filed motions to extend time. The Court will grant both motions (D.I.18, 25). The parties subsequently filed answers while these motions were pending (D.I.21, D.I.28). The Court has considered these answers in deciding the summary judgment motions at issue.

## IV. APPLICABLE LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to

---

1. As an initial matter, to the extent that the Plaintiff is claiming discrimination based on his status as an African–American male of Liberian descent, the Court notes that courts have declined to extend protection to combinations of classes. *See Floyd v. State of New Jersey,* 1991 WL 14345 (D.N.J.1991) (declining to afford plaintiff protection as a "black male," as opposed to protection as an African–American and protection as a male); *see also Hankins v. Temple University,* 829 F.2d 437 (3rd Cir.1987) (treating race and gender differently). Therefore, in the context of this case, the Court will treat claims of race, gender and national origin separately.

the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached', at least to the extent that evidence comes from disinterested witnesses." *Id.*

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### I. Plaintiff's Discrimination Claims

### A. The McDonnell Douglas Framework

▪ Discrimination claims under Title VII are analyzed under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Reeves*, 120 S.Ct. at 2106. Once a prima facie case is established, the burden of production shifts to the defendant to produce a legitimate non-discriminatory reason for the adverse or retaliatory employment action taken against the plaintiff. *Id.* Because the burden of persuasion does not shift at this stage, the employer's legitimate non-discriminatory reason is not evaluated insofar as its credibility is concerned. *Id.* Once a legitimate nondiscriminatory reason is proffered, the presumption of discrimination or retaliation created by the prima facie case "drops away." *Id.* At this point, the plaintiff must proffer sufficient evidence for the fact finder to conclude by a preponderance of the evidence that the legitimate non-discriminatory reasons offered by the employer were not true, but were a pretext for unlawful discrimination or retaliation. Although the prima facie case and the inferences drawn therefrom may still be considered at the pretext stage, this evidence must be combined with sufficient evidence to permit the trier of fact to conclude that the employer intentionally discriminated or retaliated against the plaintiff. *Id.* To this effect, it is not enough for the fact finder to disbelieve the defendant's legitimate non-discriminatory reason. Rather, even if the fact finder finds the defendant's reason unpersuasive or contrived, there must still be sufficient evidence for the fact finder to believe the plaintiff's explanation for the adverse action, i.e. that the defendant intentionally discriminated or retaliated against the plaintiff. *Id.* at 2108–2109.

### B. Whether Defendant is Entitled to Summary Judgment on Plaintiff's Race Discrimination Claim Under Title VII.

▪ To establish a prima facie case of wrongful termination based on race dis-

crimination under Title VII, a plaintiff must establish that: (1) he or she is a member of a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) either non-members of the protected class were treated more favorably than the plaintiff, or the circumstances of the plaintiff's termination give rise to an inference of race discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318–19 (3d Cir.2000); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356 (3d Cir.1999).

## 1. Whether Plaintiff has Established a Prima Facie Case for Racial Discrimination

■ In this case, Defendant only disputes whether Plaintiff has established the fourth element of the prima facie case. Therefore, the Court will examine whether Plaintiff has established the fourth element.

Defendant contends that no rational jury could conclude that its decision to terminate Plaintiff's employment was the result of a discriminatory motive. First, Defendant argues that the new employee hired to replace Plaintiff was an African–American male. Although this employee was later terminated due to "no call/no show", *i.e.* for cause, and later replaced by a female caucasian employee, Defendant argues that these facts negate any inference of discrimination.

In response, Plaintiff contends that sufficient evidence exists to create an inference of intentional discrimination in Defendant's employment decisions. Plaintiff claims that he was treated less favorably than similarly situated female white co-workers because he was denied a pay-raise given to such employees. Specifically, he contends that Jessica Porter and Angela Barlow were hired after Plaintiff, yet received raises before him, received less fa-

vorable evaluations and "played and sat" in the Manager's Office. (D.I. 28 at 3). Also, Plaintiff argues that Ms. Porter, while Plaintiff was training her as a Night Auditor, stated "I will eventually get your job." (D.I. 28 at 1). Further, Plaintiff contends that Ms. Porter informed him of her pay raises and also indicated that her race and sex were contributory factors. (D.I. 28 at 1). Additionally, in regard to racial discrimination, Plaintiff asserts that a Night Auditor, who was also an African–American male, and was terminated a few days before Plaintiff, informed him of "management's discrete discriminatory practices." (D.I. 28 at 4). Finally, Plaintiff claims that the affidavit of Jean Frick is false and that Kristine Rose's affidavit contains forgery and inconsistencies.

In discussing the requirements of a prima facie case under Title VII, the Third Circuit has recognized that the elements of a prima facie case may vary depending on the facts and circumstances in each case. *Bray v. L.D. Caulk Dentsply Int'l*, 2000 WL 1800527, *4, 2000 U.S. Dist. LEXIS 11062,*3 (D.Del. Jul. 31, 2000) (citing *Pivirotto*, 191 F.3d at 352). While there does not appear to be a requirement that a plaintiff prove that similarly situated individuals were treated differently in the context of the prima facie case, the Third Circuit does require the plaintiff to show circumstances which give rise to an inference of discrimination. Circumstances which may give rise to an inference of discrimination include the more favorable treatment of individuals who are not in the plaintiff's protected class. *Bray*, 2000 WL 1800527, *3, 2000 U.S. Dist. LEXIS 11062, at *3.

In the instant case, Plaintiff claims that he was treated less favorably than similarly situated female white co-workers because he was denied a pay-raise given to such employees. Specifically, he cites the

fact that Ms. Porter received a raise in late October, 1999, and he did not. However, the record evidence establishes that, Ms. Porter's raise was based on the increased hours she assumed as the part-time replacement at Night Auditor when Ms. Welker's employment ended. (D.I. 28 at 3). In addition, the evidence affidavit of Jean Frick establishes that Plaintiff did receive a raise on November 21, 1999, shortly after his performance evaluation was completed. (D.I. 28 at 3). In fact, Plaintiff's pay-raise made him the highest paid front desk employee. Plaintiff also claims that an inference of discrimination is created by Ms. Porter's comments suggesting that she would eventually get his job because of her race and gender, coupled with the fact that she did eventually assume his position following his termination. Moreover, Plaintiff alleges that Defendant's hiring of Mr. Prayer, an African American male, to replace him was simply a "pretext" that further supports the inference of discrimination. However, Plaintiff acknowledges in his papers that both his predecessor and immediate successor in the position of Night Auditor were African American males. (D.I. 28 at 4). The fact that Mr. Prayer was terminated for cause shortly thereafter and replaced by Ms. Porter, in the Court's view, is insufficient to create an inference of discriminatory intent on the part of Defendant in its employment decisions.

When determining whether a plaintiff's claims should survive summary judgment, the record must be viewed as a whole, and evidence should not be considered in a vacuum. *See Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 276 (3d Cir.2001) (holding that "while the individual pieces of evidence alone may not suffice to make out the claims asserted, we must view the record as a whole picture"). Viewed in this context, Ms. Porter's comments about eventually getting Plaintiff's job because of her race and gender do not support an inference of discrimination because at best they constitute "stray remarks" by an individual with no authority to enforce them. *See Pivirotto,* 191 F.3d at 352–54 (holding that the protected or non-protected status of a replacement employee in wrongful termination cases is not a determinative factor in answer to whether a plaintiff has established a prima facie case); *see also Ezold v. Wolf, Block, Schorr, & Solis–Cohen,* 983 F.2d 509, 545 (3rd Cir.1992) (holding that stray remarks by non-decision makers are inadequate to support an inference of discrimination). Thus, when the record is viewed as a whole, in a light most favorable to Plaintiff, the Court concludes that Plaintiff has not established an inference of discrimination on the part of the Defendant. Accordingly, the Court concludes that Plaintiff has failed to meet his burden of establishing a prima facie case for racial discrimination.

**2. Whether Plaintiff has Offered Sufficient Evidence for a Reasonable Fact Finder to Conclude that Defendant's Reason for Plaintiff's Discharge was Pretextual.**

However, even if the Court were to conclude that Plaintiff's evidence was sufficient to create an inference of discrimination for purposes of establishing a prima facie case of racial discrimination, the Court concludes that Plaintiff has not offered sufficient evidence for a reasonable fact finder to conclude that Defendant's reason for Plaintiff's discharge was a pretext for intentional racial discrimination.

Defendant contends that Plaintiff was terminated due to insubordination. Because Defendant has articulated a legitimate non-discriminatory reason for terminating Plaintiff, the presumption of discrimination which arises from Plaintiff's prima facie case disappears. Accordingly,

Plaintiff must "cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996). A plaintiff can cast sufficient doubt on a defendant's legitimate non-discriminatory reason by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them 'unworthy of credence'." *Reeves*, 120 S.Ct. at 2106 (citations omitted).

■ Under the *Fuentes/Sheridan* inquiry, the plaintiff may also survive summary judgment by pointing to evidence in the record which "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764. In *Simpson*, this Court provided the following explanation of this prong: "[f]or example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson*, 142 F.3d at 645 (citing *Fuentes*, 32 F.3d at 765).

■ Plaintiff proffers the same evidence in the pretext stage that he offered in regard to the inference of discrimination. However, the analysis at this stage will differ in that the Court must consider the more stringent question of whether the evidence is sufficient to establish pretext, rather than whether the evidence is sufficient to establish an inference of discrimination. *Maull v. Div. of State Police*, 141 F.Supp.2d 463, 483 (D.Del.2001).

■ Plaintiff's brief focuses primarily on the fact that he was a highly praised employee which makes his termination for insubordination more likely than not a pretext for racial discrimination. Plaintiff further contends that he was treated less favorably than similarly situated white female employees in that he was denied a pay-raise, that he was "set up" by Ms. Porter and the other white females, and that he was not insubordinate when asked about the allegations of misconduct. Plaintiff explains that those facts, coupled with Ms. Porter's comments about eventually replacing him because of her race and gender, are sufficient evidence from which a reasonable fact finder could find Defendant's legitimate non-discriminatory reason "unworthy of credence." (D.I. 27 at 15).

However, Plaintiff has failed to establish any evidence that casts sufficient doubt on Defendant's proffered reason for Plaintiff's termination. Specifically, he has not produced evidence of past discrimination either involving him or those in his protected class by the Defendant, nor has he offered any credible evidence of favorable treatment for employees of the non-protected class, such as affidavits. His evidence consists of general allegations of Defendant's discriminatory motives based on hearsay and personal beliefs not predicated on actual knowledge and wholly unsupported by the record.

Accordingly, upon reviewing the evidence in a light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to offer sufficient evidence from which a reasonable fact finder could discredit Defendant's legitimate non-discriminatory reason for terminating Plaintiff's employment. Thus, even if Plaintiff established a prima facie case of racial discrimination, he did not cast sufficient doubt on Defendant's proffered legitimate nondiscriminatory reason. Accordingly, summary judgment is appropriate.

## C. Whether Defendant is Entitled to Summary Judgment on Plaintiff's Gender Discrimination Claim Under Title VII.

Although Defendant did not address Plaintiff's gender discrimination claim separately from his race and national origin discrimination claims, Defendant does not challenge the first three elements of Plaintiff's prima facie case for a discrimination claim in general. Therefore, the Court will examine whether Plaintiff has fulfilled the fourth element required for a prima facie showing of gender discrimination below.

■ The fourth element of Plaintiff's prima facie case for gender discrimination requires Plaintiff to establish that either non-members of the protected class were treated more favorably than the Plaintiff, or the circumstances of the Plaintiff's termination give rise to an inference of race discrimination. In this case, the only evidence that Plaintiff proffers in regard to gender discrimination, is that Plaintiff contends that two female co-workers were given raises when he was not and that one co-worker claimed she would have his job.

Viewing the evidence in the light most favorable to the Plaintiff, the Court cannot conclude that Plaintiff has established an inference of gender discrimination. In regard to the allegation of the female employee pay raise, the Court finds this argument without merit because the wage histories attached to Ms. Frick's affidavit indicate that Plaintiff was receiving the same hourly wage as Ms. Porter until November 21, 1999, when he became the highest paid front-desk employee. (D.I.23). Plaintiff has offered no evidence to rebut this information. Additionally, the Court finds that Ms. Porter's alleged comments about how her race and gender were contributory factors, by itself does not rise to the level of an inference of gender discrimination. Therefore, the Court concludes that Plaintiff has failed to establish a prima facie case of gender discrimination under Title VII. Accordingly, summary judgment as to the gender discrimination claim is appropriate.

## D. Whether Defendant is Entitled to Summary Judgment on Plaintiff's National Origin Discrimination Claim Under Title VII.

■ Again, the Court notes that, although Defendant did not address Plaintiff's national origin discrimination claim separately from the race and gender discrimination claims, Defendant does not challenge the first three elements of Plaintiff's prima facie case for a discrimination claim in general. Therefore, the Court will examine whether Plaintiff has fulfilled the fourth element required for a prima facie showing of national origin discrimination below.

The fourth element of Plaintiff's prima facie case for gender discrimination requires Plaintiff to establish that either non-members of the protected class were treated more favorably than the Plaintiff, or the circumstances of the Plaintiff's termination give rise to an inference of national origin discrimination. This claim is based on the same predicate facts as the previous claims discussed.

The only evidence of national origin discrimination that the Court can discern from the review of the papers submitted, is the contention that Plaintiff was the only person of another national origin (Liberian) who worked as a Front Desk Representative/Night Auditor. (EEOC Complaint at D.I. 3). The Court finds that this conclusory allegation, by itself does not rise to the level of an inference of discrimination. Therefore, the Court concludes that Plaintiff has not established a prima facie case for his claim of national origin discrimination, and therefore, summary judgment as to this claim is appropriate.

## III. Pay Discrimination Claim

 By his Complaint, Plaintiff alleges that he was given "Unfair Compensation; failure to raise as provided to other white females." (D.I.3). As an initial matter, the Court notes that the Plaintiff did not make this claim of unfair compensation in his EEOC charge. The standards as to whether a plaintiff may assert, in a Title VII lawsuit, claims that he never presented to the EEOC are well established. The Third Circuit has stated:

> [W]e affirmed that the 'parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occur during the pendency of proceedings before the commission.

*Anjelino v. The New York Times, Co.*, 200 F.3d 73, 94 (3d Cir.1999) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–399 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977)). Therefore, the Court concludes that allegations of pay discrimination cannot be expected to grow out of a charge of discrimination that was limited to wrongful termination. *See e.g. Hennessey v. Guinness Health Venture, Inc.*, Civ.A. 99–2762, 2000 WL 420629, 2000 U.S. Dist. Lexis 4932 (E.D.Pa. April 11, 2000) (dismissing age discrimination claim based on a theory different from that raised in the EEOC charge); *Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs*, 822 F.Supp. 1181 (E.D.Pa.1993) (dismissing failure to promote claim as beyond the scope of an EEOC charge alleging pay differential and retaliation).

 However, even if the pay discrimination claim "grows out of" the EEOC charge, the Court finds that there is no merit to the claim. Specifically, as evidenced by the affidavit of Jean Frick, Defendant's Human Resources Coordinator, Plaintiff received a pay-raise effective November 21, 1999. Plaintiff's pay-raise made him the highest paid employee among the hotel's front desk staff. Based on this, summary judgment as to this claim is appropriate.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion for Summary Judgment (D.I.21).

An appropriate Order will be entered.

## *ORDER*

NOW THEREFORE, for the reasons stated set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED this *28th* day of March 2003 that:

(1) Defendant's Motion for Summary Judgment (D.I.21) is *GRANTED;*

(2) Defendant's Motion to Extend Time to 9/10/02 for Defendant to File an Answer Brief (D.I.18) is *GRANTED;*

(3) Plaintiff's Motion to Extend Time to File Pleadings, Answering Briefs, etc. (D.I.25) is *GRANTED;*

(4) Plaintiff's Motion for Summary Judgment (D.I.14) is *DENIED* as moot;

(5) Plaintiff's Motion to Compel Defendant to Produce Front Desk Log Books (D.I.26) is *DENIED* as moot;

(6) Plaintiff's Motion to Quash Defendant's Affidavits (D.I.27) is *DENIED* as moot;

(7) Plaintiff's Motion to Compel Defendant to Produce Current Addresses and Phone Numbers of Witnesses (D.I.28–2) is *DENIED* as moot;

(8) Plaintiff's Motion for Contempt (D.I.38) is *DENIED* as moot.