**In re SAFETY–KLEEN CORP.,
et al., Debtors.**

**No. 00–02303 (PJW).**

United States Bankruptcy Court,
D. Delaware.

Jan. 29, 2008.

Donna L. Culver, Gilbert R. Saydah, Jr., Curtis S. Miller, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, for Oolenoy Valley Consulting LLC, as Trustee of the Safety–Kleen Creditor Trust.

David Carter, Ardsley, NY, Pro Se Claimant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PETER J. WALSH, Bankruptcy Judge.

This ruling is with respect to the objection (Doc. # 9945) of Oolenoy Valley Consulting LLC ("Oolenoy"), the trustee of the Safety–Kleen Creditor Trust, to Proofs of Claim Nos. 4854 and 18500 filed by David Carter in the bankruptcy cases of Safety–Kleen Corp. and certain of its affiliated debtors (collectively "the Debtors"). The following represents the Court's findings of fact and conclusions of law with respect to Oolenoy's claims objection. Based on the reasoning discussed below, Mr. Carter's claims are disallowed, except for his claim for $5,957.

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

### FINDINGS OF FACT

1. On June 9, 2000 the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101, *et seq.*

2. On August 1, 2003, the Court entered an order confirming the Debtors' Modified First Amended Joint Plan of Reorganization of Safety–Kleen Corp. and Certain of Its Direct and Indirect Subsidiaries. (Doc. # 7245.)

3. Mr. Carter, an African–American, was formerly employed as a material handler in a Thornwood, New York facility owned and operated by debtor Safety–

Kleen Systems, Inc. (Tr. 39:1–2.[1]) Mr. Carter's duties included loading and unloading trucks, general maintenance, assisting in environmental compliance, and tracking and ordering supplies and inventory. (Tr. 39:3–8.)

4. Mr. Carter was terminated from his job on March 2, 2000. For a time of fifteen months leading up to Mr. Carter's termination, James Drozdowski was the general manager of the Thornwood facility. (Tr. 37:9–14.) Mr. Drozdowski served as Mr. Carter's direct supervisor and had daily interaction with him. (Tr. 37:9–24.) During this same time, Linda Brooks served the Debtors as a lead secretary. (Brooks Tr. 6:22–7:4.[2]) Ms. Brooks also had daily interaction with Mr. Carter. (Brooks Tr. 10:4–18.)

5. The Debtors provided their employees with a handbook titled "Human Resources Policies, Rules, and Procedures" (the "Employee Handbook"). (Tr. 38:6–11.) Mr. Drozdowski testified that Mr. Carter was given one of these handbooks. (Tr. 38:14–15.) The Employee Handbook contains a section titled "Mandatory Rules" and states than an employee's "[f]ailure to comply with [these] rules shall result in discharge." (Doc. # 10002, Ex. C, p. 7.) The "Mandatory Rules" section states in relevant part as follows:

> There will be no drinking of alcoholic beverages during working hours. No one shall drink while on Company time, be under the influence of any alcoholic substance while on Company time, or be in the possession of any alcoholic substance on Company property or in any Company vehicle at any time.

> \* \* \*

> Insubordination of any kind, such as refusal to perform work requirements . . . is prohibited.

> \* \* \*

> Walking off the job without permission shall be considered a resignation.

> \* \* \*

> Gambling on Company property or Company time is prohibited.

(*Id.* at pp. 7–8.)

6. According to Oolenoy, Mr. Carter violated numerous company rules including those listed above during his employment with the Debtors. Mr. Drozdowski and Ms. Brooks testified that Mr. Carter failed to carry out tasks that were assigned to him and disappeared from the worksite on occasion. (Tr. 39:13—40:3; Brooks Tr. 10:25—11:14.) The Debtors stored propane tanks that are required under relevant regulations to be secured in an upright position. Mr. Drozdowski and Ms. Brooks testified that Mr. Carter repeatedly failed to secure the tanks correctly, thus causing a serious safety hazard and subjecting the Debtors to the possibility of a penalty. (Tr. 40:4–17; Brooks Tr. 11:19–25.) Mr. Drozdowski also claimed that he saw Mr. Carter with tickets used for gambling on football games and that he told Mr. Carter often that he needed to stop gambling. (Tr. 41:6–18.) Ms. Brooks also

---

1. Exhibit A of Doc. # 10003 is the transcript of the May 16, 2007 hearing on the Debtors' objection to Mr. Carter's claim (the "May 16 Hearing"). All references to this transcript will be cited herein as (Tr. [page # ]:[line # ] ).

2. Exhibit B of Doc. # 10003 is the transcript of the deposition of Ms. Brooks taken on May 15, 2007. As Ms. Brooks could not be compelled to appear in court to testify, the Court accepted the deposition as Ms. Brooks' testimony. (Tr. 94:22—95:15; 97:10–14.) References to this transcript will be cited herein as (Brooks Tr. [page # ]:[line # ] ).

claimed that Mr. Carter brought people into the Debtors' facility on weekends without authorization. (Brooks Tr. 12:12–16.)

7. On March 1, 2000, the day before Mr. Carter was fired, there was an internal environmental inspection and audit at the Debtors' Thornwood facility. Mr. Drozdowski and Ms. Brooks testified that during that inspection, the inspector found an open bottle of alcohol in a refrigerator. (Tr. 42:25—43:3; Brooks Tr. 11:15–18; 12:4–10.) Mr. Drozdowski claimed that he later questioned Mr. Carter about the alcohol and Mr. Carter admitted that it was his. (Tr. 43:4–15.)

8. Mr. Drozdowski testified that Mr. Carter was supposed to be at work during the inspection on March 1, 2000. (Tr. 76:4–10; 87:10–11.) However, during the inspection Mr. Drozdowski could not find Mr. Carter on the work site. Mr. Drozdowski subsequently found Mr. Carter at around 3:30 pm at a deli across the street. (Tr. 43:16–17.) According to Mr. Drozdowski, Mr. Carter was gambling (playing keno) and drinking beer. (Tr. 43:22—44:5.) Mr. Carter denies that he was drinking and claims that he was not due to be at work until 4:30 pm that day. (Tr. 98:22–25.)

9. After discovering Mr. Carter in the deli, Mr. Drozdowski returned to his office and contacted the human resources manager and the regional manager to report on Mr. Carter's actions. He was then instructed to terminate Mr. Carter, which he did the following day. (Tr. 44:19—45:3.) Mr. Drozdowski testified that he told Mr. Carter that he was being fired because (1) Mr. Drozdowski suspected him of being under the influence of alcohol during working hours, (2) he was in possession of alcohol on the work site, (3) he was gambling on company time and (4) he was absent from the Debtors' facility without permission during working hours. (Tr. 45:18–23.)

10. Mr. Carter claims that he was fired because of his race and that during the time that he was employed by the Debtors, he was "discriminated against to the utmost." (Tr. 100:23–24.) According to Mr. Carter, Mr. Drozdowski admitted at the time he fired Mr. Carter that he was mad because Mr. Carter made more money than Mr. Drozdowski. (Tr. 99:10–16.) However, Oolenoy points out that, according to the Debtors' business records, Mr. Drozdowski made approximately $50,000 more than Mr. Carter in the year prior to Mr. Carter's termination. (Tr. 49:2–50:14; Doc. # 10003, Exs. E and F.) [3]

11. Mr. Carter admitted at the May 16 Hearing that he was told he was fired because he refused to complete an assignment, but claimed that he was not told that his termination had anything to do with drinking alcohol or being absent from the job site during work hours. (Tr. 102:18–21.) Furthermore, Mr. Carter claims that he never drank on the work site and was never absent from work without permission. (Tr. 103:21–22.) However, Mr. Carter nowhere denies that he was the owner of the opened container of alcohol found in a refrigerator at the Debtors' facilities.

12. Mr. Drozdowski testified that after Mr. Carter was fired, another African-American employee, Eric Boyd, assumed Mr. Carter's work responsibilities. (Tr. 47:9–17.)

---

**3.** Mr. Carter submitted three affidavits that further discuss the circumstances surrounding his termination. (*See* Doc. # 9943, Ex. C; Doc. # 9972.) However, I refused to accept these affidavits into evidence during the May 16 Hearing because, as the affiants did not appear in court to testify, their affidavits are hearsay.

13. In June 2001, approximately fifteen months after Mr. Carter was fired, the Debtors closed the Thornwood facility. (Tr. 50:15–17.) The Debtors' employees at the Thornwood facility had the opportunity to apply for available openings at other facilities belonging to the Debtors. (Tr. 50:18—51:4.) Mr. Drozdowski testified that he did not believe that Mr. Carter would have been offered a position in another facility due to Mr. Carter's employment history at the Thornwood facility.

14. Mr. Carter testified that he has not held a job since he was fired from his employment with the Debtors. (Tr. 106:20–23.) The only money Mr. Carter has earned over the last seven years came from cutting grass and shoveling snow on occasion for neighbors and relatives. (Tr. 107:21—110:22.) During this time period Mr. Carter claims that he applied for jobs, but only listed three job applications that he submitted. (Tr. 107:6–18.)

15. After his termination Mr. Carter applied for unemployment benefits from the Department of Labor of the State of New York. The Department of Labor made an initial determination that Mr. Carter was not entitled to benefits because he was discharged for misconduct. (Doc. # 9943, Ex. A.) A hearing took place at Mr. Carter's request on May 1, 2000. (Id.) Apparently, there was no representative from the Debtors at that hearing, and, relying on Mr. Carter's undisputed testimony, the Unemployment Insurance Appeal Board determined that Mr. Carter had not engaged in any misconduct and was therefore entitled to unemployment benefits. (Id.; Tr. 16:10–18.) The Debtors applied twice to reopen that decision, but failed both times to appear before an Administrative Law Judge to be heard on the issue. (Doc. # 9943, Ex. A.)

16. Mr. Carter filed a complaint against the Debtors on March 14, 2000 with the State of New York Division of Human Rights alleging employment discrimination. (Id.) On August 7, 2000, Mr. Carter filed Proof of Claim 4854 in the Debtors' chapter 11 case asserting a general unsecured claim of an unknown amount based on a "Federal Charge." (Id. at Ex. B.) This "Federal Charge" is assumedly Mr. Carter's complaint with the Division of Human Rights. On March 8, 2001, Mr. Carter filed a second Proof of Claim, numbered 16669, against the Debtors for $2,080 for unpaid wages. (Id. at Ex. A.) On October 16, 2006, Mr. Carter filed a third Proof of Claim, numbered 18500, against the Debtors for $5,967. (Id. at Ex. C.) In addition to a claim for unpaid wages, Proof of Claim 18500 also states "wrongful termination" as a basis for the claim and adds an unidentified secured claim. (Id.) This claim is apparently intended to replace Proof of Claim 4854. (Id.) Mr. Carter has further stated that Proof of Claim 16669 and Proof of Claim 18500 represent claims for accrued unused sick, holiday and vacation leave. (Doc. 9959, p. 1.) At the May 16 Hearing Mr. Carter stated that the amount of his claim is $5,000,000. (Tr. 28:21–25.)

17. Oolenoy has objected to all three of Mr. Carter's claims. (See Doc. # 9943 and # 9945.) However, although Oolenoy strongly disputes any liability to Mr. Carter, Oolenoy has consented to the allowance of a $5,967 general unsecured claim. (Doc. # 10002, p. 29; Tr. 26:20—27:1.) At the May 16 Hearing on the Oolenoy's objection to Mr. Carter's claims, I ruled that Mr. Carter was entitled to that claim. (Tr. 21:14–16.) Therefore, the only issues that remain regard the termination of Mr. Carter's employment.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Mr. Carter, proceeding *pro se*, characterizes his claim as one for discrimination, which the Court understands as an employment discrimination claim under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e *et seq.*

3. The Supreme Court set out a burden-shifting framework for discrimination claims under Title VII in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the employee must first establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the employee has established a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the adverse employment action. *McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The employee must then produce evidence that the employee's nondiscriminatory reason was a mere pretext. *McDonnell,* 411 U.S. at 804, 93 S.Ct. 1817; *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### A. Mr. Carter Failed to Establish a Prima Facie Case

■ 4. In order to establish a prima facie case for an employment discrimination claim under Title VII, an employee must provide evidence that:

(1) he or she is a member of a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) either non-members of the protected class were treated more favorably than the plaintiff, or the circumstances of the plaintiff's termination give rise to an inference of race discrimination.

*Anderson v. McIntosh Inn,* 295 F.Supp.2d 412, 418–19 (D.Del.2003); *see also McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817; *Igwe v. E.I. DuPont de Nemours & Co.,* Civ. No. 03–839 JJF, 2005 WL 196577, at *2, 2005 U.S. Dist. LEXIS 1254, at *5 (D. Del. Jan. 24, 2005), *aff'd,* 180 Fed.Appx. 353 (3d Cir.2006).

■ 5. Mr. Carter has not provided enough evidence to establish a prima facie case. It is clear that Mr. Carter, who is African–American, is a member of a protected class. Additionally, Oolenoy does not dispute that Mr. Carter was qualified for his job or that he was discharged. However, Mr. Carter has failed to provide enough evidence to meet the fourth element of a prima facie case for discrimination (i.e., either non-members of a protected class were treated more favorably, or the circumstances give rise to an inference of race discrimination). Mr. Carter has made no allegations about the Debtors' treatment of employees of other races. Although Mr. Carter made some allegations that could lead to an inference of race discrimination, they are no more than bald assertions, unsupported by factual evidence.

■ 6. For example, Mr. Carter stated that he was "discriminated against to the utmost," (Tr. 100:23–24), but did not provide any testimony or admissible evidence to show how he was discriminated against. General assertions of discrimination cannot serve as the basis of a wrongful termination claim unless they are accompanied by factual evidence that supports an inference of discrimination. *Moorer v. Verizon Commc'ns., Inc.,* Civ. No. 03–1265, 2005 WL 2807140, at *8, 2005 U.S. Dist. LEXIS 39783, at *24 (W.D.Pa. Oct. 27, 2005), *aff'd,*

211 Fed.Appx. 98 (3d Cir.2006) ("Plaintiff's own subjective belief that she was discriminated against, absent evidentiary support in the record, means that she would not ultimately prevail...."). In his testimony during the May 16 Hearing, Mr. Carter did not testify as to any actions or words from Mr. Drozdowski or other employers of the Debtors that could be understood as springing from feelings of prejudice or malice towards people of a particular race.

7. Mr. Carter contradicted his own assertions that he was fired for discriminatory reasons by admitting that he was fired for reasons unrelated to his race. He said in the May 16 Hearing that Mr. Drozdowski told him that he was fired because he made more money than Mr. Drozdowski.[4] In fact, the Debtors' records show that Mr. Drozdowski earned considerably more money than Mr. Carter. (Tr. 49:2—50:14; Doc. # 10003, Exs. E and F.) However, if Mr. Drozdowski had fired Mr. Carter for this reason then Mr. Carter would have no claim for employment discrimination. Mr. Carter also admitted that he was told he was fired because he refused to complete an assignment.[5] Given these admissions, the circumstances surrounding Mr. Carter's termination do not give rise to an inference of discrimination and Mr. Carter has not established a prima facie case.

*B. The Debtors Have Legitimate Non-Discriminatory Reasons for Mr. Carter's Termination*

8. Even if Mr. Carter could establish a prima facie case, he still would not succeed on this claim because the Debtors have produced several legitimate non-discriminatory reasons for Mr. Carter's termination. The burden on employers to produce alternative reasons for allegedly discriminatory adverse employment actions is a "relatively light burden." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). The employer need only "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089; *see also Embrico v. United States Steel Corp.,* 404 F.Supp.2d 802, 818 (E.D.Pa.2005). If the employer is able to provide a legitimate reason, then the employee's prima facie case "drops away" and the burden shifts back to the employee. *Anderson,* 295 F.Supp.2d at 418; *McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817.

9. According to the Debtors, Mr. Carter violated four rules that warranted immediate termination according to the Debtors' Employee Handbook. On March 1, 2000 during working hours, Mr. Carter (1) was suspected of being under the influence of alcohol, (2) admitted to possessing alcohol on the Debtors' premises, (3) gambled, and (4) left the work place without permission. (Tr. 45:18–23.) Additionally, Mr. Carter allegedly brought people into the work place without authorization, (Brooks Tr. 12:12–16), and failed to perform tasks correctly, thus causing a safety hazard on more than one occasion. (Tr. 40:4–17; Brooks Tr. 11:19–25.) Each of

---

4. Mr. Carter testified as follows:
I said, why you fire me, Jim [Drozdowski]? I said, you mad because I'm the highest paid employee there at the time. He said, that's right.... I said, I do my job? He said, yeah. I said, why you fire me then? Because you make more than me he told me....

(Tr. 99:10–16.)

5. Mr. Carter testified as follows: "Court like I said in March of 2000 the reason [Mr. Drozdowsky] fired me [was] because he said I refused to do my assignment." (Tr. 102:18–21.)

these violations constitutes a legitimate non-discriminatory reason for Mr. Carter's termination. Thus the burden of production is shifted back onto Mr. Carter.

### C. Mr. Carter Has Provided No Evidence that the Debtors' Non–Discriminatory Reasons for His Termination Were Mere Pretext

10. As the Debtors had legitimate non-discriminatory reasons for Mr. Carter's termination, Mr. Carter has the burden of producing evidence sufficient for the trier of fact to find by a preponderance of the evidence that the legitimate non-discriminatory reason offered by the employer was a mere pretext for unlawful discrimination or retaliation. *Anderson,* 295 F.Supp.2d at 418; *McDonnell,* 411 U.S. at 804, 93 S.Ct. 1817. It is not enough for the employee to show that the employer's actions were wrong or mistaken. *Fuentes,* 32 F.3d at 765. Rather, the employee must show that the proffered reason is "unworthy of credence," *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 523 (3d Cir.1992), and "that the employer did not act for [the asserted] non-discriminatory reasons." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993) (internal quotation omitted); *see also Fuentes,* 32 F.3d at 765. In other words, the employee must convince the trier of fact "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. 2742; *see also Jones v. School Dist.,* 198 F.3d 403, 412 (3d Cir. 1999); *Doll v. Port Auth. Trans–Hudson Corp.,* 92 F.Supp.2d 416, 421 (D.N.J.2000), *aff'd,* 261 F.3d 491 (3d Cir.2001).

11. As the Debtors' non-discriminatory reasons for firing Mr. Carter are legitimate, Mr. Carter has a burden to show by a preponderance of the evidence that the Debtors' non-discriminatory reasons are a mere pretext for unlawful discrimination. Mr. Carter has not met this burden. Mr. Carter summarily denied that he committed several of the violations that the Debtors assert, but he nowhere denies that the alcohol found in a refrigerator at the Thornwood facility was his. Mr. Drozdowski testified that he confronted Mr. Carter about the alcohol and Mr. Carter admitted that it was his. (Tr. 42:25—43:15.) This testimony is uncontroverted. The Debtors' Employee Handbook provides:

> No one shall drink while on Company time, be under the influence of any alcoholic substance while on Company time, *or be in the possession of any alcoholic substances* on Company property or in any Company vehicle at any time.

(Doc. # 10002, Ex. C, p. 7 (emphasis added).)

12. Because there is no issue of fact concerning this clear violation of a rule in the Debtors' Employee Handbook, there is no need to consider the issues of fact surrounding Mr. Carter's other alleged violations. There is no evidence to suggest that Mr. Carter's possession of alcohol on the Debtors' premises was not the reason for his termination, and therefore Mr. Carter's burden is unfulfilled.

13. The burden that shifts back and forth between the employee and the employer under the *McDonnell Douglas* framework is only a burden of production. *See Jones,* 198 F.3d at 410. The burden of persuasion remains on the employee throughout, and therefore it is up to the employee to persuade the trier of fact that the employer intentionally discriminated against him or her. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097. ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."); *see also Young v. Pennsauken Twp. Sch. Dist.,* 47 Fed.Appx.

160, 161 (3d Cir.2002). Mr. Carter has failed to meet either his burden of production or his burden of persuasion.

## CONCLUSION

For the foregoing reasons, Oolenoy's claims objection is sustained and Mr. Carter's claims are disallowed, except for the claim in the amount of $5,957 which is allowed.

## ORDER

For the reasons set forth in the Court's Findings of Fact and Conclusions of Law of this date, the objection of Oolenoy Valley Consulting LLC, as trustee of the Safety–Kleen Creditor Trust to claims of David Carter (Doc. # 9945)is sustained and Mr. Carter's claims are disallowed, except for the claim in the amount of $5,957 which is allowed.